IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTOPHER M. BONSALL,**       :
                                  :
    **Petitioner**              :       CIVIL NO. 1:CV-04-1561
                                  :
  v.                              :       **(Judge Rambo)**
                                  :
**FRANK GILLIS,** *et al.,*       :
                                  :
    **Respondents**             :

# M E M O R A N D U M

## I.   Introduction

Petitioner, Christopher M. Bonsall, an inmate at the State Correctional Institution in Coal Township, Pennsylvania, initiated the present action with a *pro se* petition for writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2254.  Petitioner claims that the Pennsylvania Board of Probation and Parole ("PBPP") applied amended standards to his parole application, without due process, in contravention of the Equal Protection Clause and the Ex Post Facto Clause of the United States Constitution.  Respondents argue that the petition should be dismissed for failure to exhaust state court remedies, or alternatively that the petition is without merit.  Petitioner concedes that he has not exhausted his state court remedies.  However, he argues that exhaustion would be futile and should be excused by the court.  The

parties have briefed the issues, and the matter is ripe for disposition.  For the reasons set forth below, the petition will be dismissed in part and denied in part.

**II.    Discussion**

    **A.  Exhaustion of State Court Remedies**

Petitioner filed the present petition pursuant to the provisions of 28 U.S.C. § 2254.  Under § 2254 (b)(1), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court ***shall not be granted*** unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State." (emphasis added).  "An applicant shall not be deemed to have exhausted the remedies available in the court of the State, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  It is well-settled that a state prisoner must present his federal constitutional issues to the highest court of the state before he can present the issues through federal habeas corpus.  28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-20 (1982); *Doctor v. Walters*, 96 F.3d 675 (3d Cir. 1996).  The exhaustion requirement "rests upon the principles of comity and judicial economy [and] provides state courts with an initial opportunity to consider and correct alleged violations of prisoners' rights without disruption from the federal

2

courts." *Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir. 1991); *see also Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986).

Petitioner claims that exhaustion of state court remedies would be futile, citing *Finnegan v. Bd. of Prob. & Parole*, 838 A.2d 684 (Pa. 2003). However, the Pennsylvania Supreme Court recently overruled *Finnegan* in *Cimaszewski v. Bd. of Prob. & Parole*, 868 A.2d 416, 427 (Pa. 2005). In *Cimaszewski*, the court held that mandamus relief is available to Pennsylvania state prisoners who challenge the constitutionality of parole denials based upon a claim of ex post facto violation. *Id.*; *see also DeFoy v. McCullough*, 393 F.3d 439, 445 (3d Cir. 2005) (holding mandamus is not available for Pennsylvania state prisoners challenging denial of parole on constitutional grounds other than the Ex Post Facto Clause).

However, exhaustion is not a jurisdictional requirement, *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995), and failure to exhaust is not an insurmountable bar to consideration of the merits of a habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). Although the district court may not ***grant*** relief on an unexhausted habeas claim, an application for writ of habeas corpus may be ***denied*** on the merits, notwithstanding a failure to exhaust state court remedies. 28 U.S.C. § 2254(b). Courts may exercise discretion to determine whether comity and federalism will be better served by requiring exhaustion or by addressing the merits of the petition.

3

*Granberry*, 481 U.S. at 131. If, for example, the petition presents an unresolved issue of state law, comity and judicial economy may dictate dismissal for failure to exhaust state court remedies to allow the state courts an opportunity to address the issue. By contrast, if the issue presented by the petition is well-settled, and the petitioner fails to raise a viable claim, the interests of the state courts, federal courts, the Petitioner, and the Respondents would be best served by disposition of the petition without further state and federal proceedings. *Id*. at 134-35. The United States Court of Appeals for the Third Circuit has held that district courts reviewing habeas petitions may dismiss plainly meritless unexhausted claims. *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1230 (3d Cir. 1992). Accordingly, although Petitioner has not exhausted his state court remedies on his ex post facto claim, the petition will be addressed on the merits.

### B.  **Due Process/Equal Protection Claims**

Initially, Petitioner claims that application of changes in the parole guidelines enacted after his conviction violate his rights to due process and equal protection of the laws. Petitioner appears to argue that application of the modified parole standards to his case deprives him of his right to parole without due process of law, and such denial deprives him of parole rights afforded to other prisoners similarly situated. It is well-settled that "there is no constitutional or inherent right of a convicted person to

4

be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  However, the Third Circuit has held that "even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).  Here, the constitutionally impermissible reason for parole denial asserted by Petitioner is application of amended parole standards to his parole applications, in violation of the Ex Post Facto Clause of the United States Constitution. Therefore, the issues will be addressed in the context of the ex post facto analysis.

### C.  **Ex Post Facto Claim**

Petitioner correctly notes that the Third Circuit has held that the PBPP's initial interpretation of the 1996 amendments to the Pennsylvania parole statute, found at 61 Pa. Cons. Stat. § 331.1, violated the Ex Post Facto Clause.  *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 393 (3d Cir. 2003).[1]  In *Mickens-Thomas*, the Third Circuit

---

[1] Petitioner also argues that a subsequent change in the potential number of voting members on a parole review panel violates the Ex Post Facto Clause.  However, "in 1994, when Bonsall was convicted, parole applications could be either reviewed by either [sic] a two member panel or the entire five members of the Board."  (Doc. 11 at 18.)  Although Petitioner correctly notes that the number of Board members was increased from five to nine, "[e]ach of [his] four parole reviews from 2000 until 2004 were made by a

5

addressed a habeas petition filed by a prisoner whose life sentence had been commuted to a term of years with parole eligibility prior to the 1996 amendments to the Parole Act. The petitioner claimed that application of revised parole standards violated the Ex Post Facto Clause, and he was entitled to review under the standards in place at the time of his conviction. The Third Circuit concluded that the revised PBPP policy, "although partly discretionary, is still subject to ex post facto analysis when there are sufficiently discernable criteria to suggest to a reviewing body that the new retroactive policies are being applied against the offender's interest." *Id.* at 386. "An adverse change in one's prospects for release disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence." *Id*. at 392. The Third Circuit held that retroactive application of "changes in the parole laws made after conviction" that adversely impacted the likelihood of parole violated the Ex Post Facto Clause.

The Third Circuit noted that prior to 1996, the PBPP's internal policies required it to weigh the inmate's rehabilitation and liberty interest with the interest of public

---

two person panel," which had not changed from the previous requirement. (*Id*.) Thus, the number of Board members on Petitioner's review panels was consistent with the composition of the panel when Petitioner was convicted in 1994, and the claim is without merit.

safety in parole evaluations.[2] *Id.* at 378. Specifically, the Third Circuit noted "that the [PBPP's] Manual of Operations and Procedures recognized that '[p]robation and parole services *must* consider that offenders can change their behavior patterns when desirous, capable, and given the opportunity, help, dignity, and respect they deserve as human beings.' " *Id.* (emphasis added). In December 1996, the Pennsylvania Legislature added new language to the "aspirational introductory provision" of the parole statute, requiring that the "public safety must be considered first and foremost in the [PBPP's] execution of its mission." *Id.* at 377 (internal quotation omitted). The Third circuit concluded that the PBPP "mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." *Id.* at 391.

Notwithstanding this conclusion, the Third Circuit also acknowledged a recent decision of the Pennsylvania Supreme Court, *Winklespecht v. Pa. Bd. of Prob. & Parole*, 813 A.2d 688 (Pa. 2002), which clarified that the amended § 331.1 did not

---

[2]The Third Circuit explained that

> [i]n considering an inmate for parole, the Board must weigh numerous factors relative to the welfare of the client and the safety of the community, including seriousness of the offense; length of the sentence; institutional adjustment (behavior and program adjustment); and assessment of the effect of rehabilitation services while incarcerated. Whether the individual can be safely supervised in the community, personality characteristics, any history of family violence, strength of the parole plan (home and employment), testimony from victims, and opinions of the sentencing judge and prosecuting attorney must also be considered.

*Mickens-Thomas*, 321 F.3d at 378 (internal quotation omitted).

7

constitute binding language requiring the PBPP to place the greatest weight on consideration of the public safety. *Mickens-Thomas*, 321 F.3d at 391. However, the Third Circuit concluded that the *Winklespecht* decision, "made *after* the Board's actions on Thomas' parole, came too late to alter the Board's view of the statutory amendment on the outcome of the case." *Id*. (emphasis in original).

In *Mickens-Thomas*, as well as other non-precedential cases subsequently addressed by the Third Circuit, the appropriate remedy for an ex post facto violation in parole review is for the district court to remand the parole applications to the PBPP for re-adjudication applying the pre-1996 law. *Mickens-Thomas*, 321 F.3d at 393; *see also McLaurin v. Larkins*, 2003 WL 22147497 (3d Cir. Sept. 18, 2003); *Hollawell v. Gillis*, 2003 WL 1919371, at \*8 (3d Cir. Apr. 23, 2003). However, the class of individuals entitled to such relief is limited. Except for individuals whose parole decisions were made after the adoption of the 1996 changes, and before *Winklespecht* clarified the fact that the amendment did not change the administration of parole policies, subsequent parole reviews are made with the understanding that the 1996 amendments did not change the analysis used in the parole proceedings.

At issue in the instant case are Petitioner's parole denials of February 22, 2000, March 19, 2001, August 9, 2002 (modified on October 25, 2002), and March 23, 2004. (Doc. 4, Exs. B-F.) He challenges each on the grounds that they violate the Ex

8

Post Facto Clause of the United States Constitution. Since all four of these decisions were rendered after the 1996 amendments, the court will review each to determine whether the PBPP applied the amended standards or the pre-1996 criteria in the parole review.

### 1. February 22, 2000, March 19, 2001, and August 9, 2002 Parole Decisions

Petitioner's first three parole denials were rendered prior to *Winklespecht*, and a review of the documents (Doc. 4, Exs. B-D) reveals that the PBPP utilized the amended parole standards, contrary to the holding in *Mickens-Thomas*. In the February 22, 2000 denial, the PBPP states "the Pennsylvania Board of Probation and Parole has determined that the mandates to **protect the safety of the public** and to assist in the fair administration of justice cannot be achieved through your release on parole." *Id*. (emphasis added). Thus, it is clear that this decision placed primary, if not exclusive, emphasis on the safety of the public.

Although the March 19, 2001 and August 9, 2002 decisions do not specify the safety of the public as a basis for denial, these decisions are devoid of any specific reference to the pre-1996 standards, and there is no mention of seriousness of the offense, length of the sentence, institutional adjustment, personality characteristics, or any of the other pre-1996 factors. *Mickens-Thomas*, 321 F.3d at 378. Ultimately,

after review of these decisions the court concludes that the PBPP implemented the amended parole standards, in violation of the Ex Post Facto Clause. Although the August 9, 2002 decision was later modified to take other factors into consideration, the prior two were not. *See infra* Part II.C.2. However, as previously stated, the court may not grant habeas relief on unexhausted claims. Since Petitioner concedes that he has failed to exhaust his state court remedies, and review of his parole denials on ex post facto grounds is available in the Pennsylvania courts, the petition will be dismissed, as it relates to the February 22, 2000 and March 19, 2001 parole decisions, for failure to exhaust available state court remedies.

### 2. October 25, 2002 Modification

After the PBPP had the benefit of the *Winklespecht* decision, it conducted a review of Petitioner's August 9, 2002 parole denial. Parole was again denied, and the PBPP specified the following reasons for its decision:

> 1) The nature and circumstances of the offense(s) committed.
>
> 2) The recommendation made by the Department of Corrections.
>
> 3) [Petitioner's] refusal to accept responsibility for the offense(s) committed.
>
> 4) [Petitioner's] need to participate in and complete additional institutional programs.

10

(Doc. 4, Ex. F.)  In the decision, the PBPP not only stated that it took the required factors into account, but also noted the specific reasons why Petitioner had been denied parole.  These bases are consistent with consideration of seriousness of the offense, institutional adjustment (behavior and program adjustment), personality characteristics, assessment of the effect of rehabilitation services while incarcerated, and whether the individual can be safely supervised in the community.  These factors are set forth in the pre-1996 requirements of the Parole Act, *Mickens-Thomas*, 321 F.3d at 378, and Petitioner has not produced any evidence that the decision was unduly influenced by contemplation of the public safety first and foremost.  Thus, the court concludes that the PBPP returned to the pre-1996 standards for review of Petitioner's August 9, 2002 parole denial.

### 3. **March 23, 2004 Parole Decision**

The March 23, 2004 decision was rendered well after the PBPP had the benefit of the *Winklespecht* decision, and specified the following reasons for denial of parole:

> 1) [Petitioner's] version of the nature and circumstances of the offense(s) committed.
>
> 2) [Petitioner's] refusal to accept responsibility for the offense(s) committed.
>
> 3) [Petitioner's] lack of remorse for the offense(s) committed.

11

>    4) The recommendation made by the Department of Corrections.
>
>    5) [Petitioner's] unacceptable compliance with prescribed institutional programs.
>
>    6) [Petitioner's] need to participate in and complete additional institutional programs.
>
>    7) [Petitioner's] interview with the hearing examiner and/or Board member.

(Doc. 4, Ex. E.)  Again, the PBPP not only stated that it took the required factors into account, but also noted the specific reasons why Petitioner had been denied parole. These factors comport with the pre-1996 requirements of the Parole Act, *Mickens-Thomas*, 321 F.3d at 378, and Petitioner has not produced any evidence that the decision was unduly influenced by contemplation of the public safety first and foremost.  Thus, the court finds no evidence that the March 23, 2004 parole decision violated the Ex Post Facto Clause, and the petition will be denied as it relates to this decision.

## III.  <u>Conclusion</u>

Since Petitioner concedes that he has failed to exhaust his state court remedies for all of his challenged parole denials, and state court review is available for his ex post facto challenge to the parole decisions, the court will dismiss his petition as it

relates to the February 22, 2000 and March 19, 2001 parole decisions, for failure to exhaust available state court remedies.  However, a review of the record also supports a conclusion that the PBPP has applied appropriate standards to Petitioner's most recent parole applications, and these decisions do not violate the Ex Post Facto Clause.  The court may deny habeas relief on these issues, notwithstanding failure to exhaust state court remedies.  Thus, the petition will be denied on the merits as it relates to the August 9, 2002 (modified on October 25, 2002) and March 23, 2004 decisions.  An appropriate order will issue.

                                                                                   s/Sylvia H. Rambo
                                                                                    SYLVIA H. RAMBO
                                                                                    United States District Judge

Dated:  June 6, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTOPHER M. BONSALL,** :
:
    **Petitioner** : **CIVIL NO. 1:CV-04-1561**
:
**v.** : **(Judge Rambo)**
:
**FRANK GILLIS,** *et al.,* :
:
    **Respondents** :

## O R D E R

In accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DISMISSED** in part and **DENIED** in part. The petition is **DISMISSED** as it relates to Petitioner's challenge to the February 22, 2000 and March 19, 2001 parole decisions, for failure to exhaust available state court remedies, and the petition **DENIED** as it relates to the August 9, 2002 (modified on October 25, 2002) and March 23, 2004 decisions.

2) The Clerk of Court is directed to close this case.

3) There is no basis for the issuance of a certificate of appealability.

                                            s/Sylvia H. Rambo
                                            SYLVIA H. RAMBO
                                            United States District Judge

Dated: June 6, 2005.